IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | | |
|---|---|---|
| MR. WILLIAM R DOLPH, | ) | |
| | ) | Civil Action No.: |
| Plaintiff, | ) | 3:25-CV-00200-CBB |
| | ) | |
| vs. | ) | Christopher B. Brown |
| | ) | United States Magistrate Judge |
| DR. NAJI, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION[1]**
**ON MOTION FOR SUMMARY JUDGMENT ECF No. 20**

**Christopher B. Brown, United States Magistrate Judge**

## I. Introduction

This civil rights action was initiated by pro se Plaintiff William R. Dolph who is currently an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Houtzdale ("SCI-Houtzdale"). Dolph alleges Defendant Dr. Naji – a medical professional who treats inmates at SCI Houtzdale – violated his civil rights when he experienced a medical emergency related to his diabetes. ECF No. 12 at 5-8.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331. Presently pending before the Court is Dr. Naji's motion to dismiss or alternatively motion for summary judgment pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56. The

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

motion was converted into a motion for summary judgment on the issue of exhaustion only. ECF No. 22.

For the reasons that follow, the Court will grant Dr. Naji's motion for summary judgment based upon Dolph's failure to exhaust his claim as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

## II. Background

In October 2023, Dolph was found unresponsive in his cell at SCI-Houtzdale by another inmate. ECF No. 12 at 5; ECF No. 12-1 at 1. He alleges he was in his wheelchair, soaked with sweat and unable to talk or respond. ECF No. 12 at 5. He received medical treatment at the prison and claims a nurse told him he had "died but [was] brought back." *Id.* He was transported to a local hospital where he stayed for six days. *Id.* at 5. According to Dolph he was told his blood sugar level dropped due to the administration of excess insulin as well as an "extra" blood pressure pill neither of which he needed. *Id.* As a result, he claims this caused him diabetic shock, heart failure damaged his heart and that he suffered post-traumatic stress disorder. *Id.* He alleges this was due to the negligence of Dr. Naji who did not read his blood test results when they returned from the lab. *Id.*

Dolph claims he submitted a grievance in the U.S. mail about six days after these events occurred, but the grievance form was "lost misplaced & never reached" the appropriate officials. *Id.* at 7. When the grievance coordinator did not respond, he filed a second grievance which was denied as untimely. *Id.* Dolph concedes he did not appeal the denial of the second grievance but maintains he informed the

grievance coordinator that he filed his first grievance within six days of returning from the hospital "which they claim they never received." *Id*.

Dr. Naji attached to his motion a verification from Keri Moore, Chief of the Pennsylvania DOC, Secretary's Office of Grievances and Appeals who confirms that department records reflect no grievances were filed between 2023 and 2024 by Dolph against Dr. Naji regarding his medical issues that went to final review. ECF No. 21-2 at ¶¶ 2, 6. Moore explains that Dolph did file Grievance No. 1116628 on November 6, 2024 regarding the medical emergency that forms the basis of this lawsuit which was rejected as untimely and never went to final review. ECF No. 21-2 at ¶ 8; ECF No. 21-2 at 38, 40-43. In this grievance, Dolph stated he was "filing this grievance now due to my not knowing I had to file one to proceed legal actions for medical malpractice here at Houtzdale prison it took me awhile to get an attorney to take this case & now those attorneys requested me by law to file a grievance[.]" ECF No. 21-3 at 4.

After the initiation of this lawsuit and Defendant's filing of its Motion to Dismiss/Summary Judgment, Dolph was provided several extensions of time with which to file a response. ECF Nos. 22, 28, 34, 40 (providing Dolph with a total of six months to respond to Dr. Naji's motion). As of the date of this Memorandum Opinion, he has failed to do so. Thus, the motion will be decided without the benefit of his response. *Fekade v. Lincoln Univ.*, 167 F. Supp. 2d 731, 738 (E.D. Pa. 2001) (when a motion for summary judgment is unopposed, "the Court is required to

conduct its own examination of whether granting summary judgment is appropriate.").

## III. Standard of Review

In deciding a motion to dismiss under Rule 12, a court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record and any document "integral to or explicitly relied upon in [framing] the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up). If a court considers other matters outside of this list, the motion must be converted to a motion for summary judgment after giving the parties a reasonable opportunity to present all material discovery relevant to a summary judgment motion before the Court's decision. Fed. R. Civ. P. 12(d). Because Dr. Naji includes matters outside of the pleadings, the parties were informed that the motion was being converted to one for summary judgment.

The standard for assessing motions for summary judgment is well-settled. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the

evidence or assess credibility." *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could hold in the nonmovant's favor with respect to that issue. *Id.*

This standard is somewhat relaxed with respect to pro se litigants. *Simmons v. Gilmore*, No. 2:17-CV-00996, 2021 WL 1215773, at *8 (W.D. Pa. Mar. 31, 2021) (citing *Anderson*, 477 U.S. at 256). Where a party is representing himself pro se, the complaint is to be construed liberally. *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010). A pro se plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g.*, *Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). At the summary judgment stage of the proceedings, the Court need not credit bald assertions or legal conclusions unaccompanied by evidentiary support. *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017).

## IV. Discussion

Dr. Naji argues that Dolph failed to exhaust his administrative remedies because he did not submit a timely grievance related to his medical issues and did not appeal any grievance to final review. ECF No. 21 at 12-17.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As explained by the Court of Appeals:

> The exhaustion mandate is a "centerpiece" of the statute, *see Woodford v. Ngo*, 548 U.S. 81, 84 (2006), that serves three important statutory goals: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits, *Spruill [v. Gillis],* 372 F.3d [218,] 230 [3d Cir. 2004]. The PLRA requires "proper exhaustion," *Woodford*, 548 U.S. at 92, which means "complet[ing] the administrative review process in accordance with the applicable procedural rules." *Downey v. Pennsylvania Dep't of Corrections*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Woodford*, 548 U.S. at 88). The only limit on § 1997e(a)'s mandate is that "administrative remedies must be available to the prisoner" as both a formal and practical manner. *Id.* (citing *Ross v. Blake*, 578 U.S. 632, 641-42 (2016)).

*Talley v. Clark*, 111 F.4th 255, 262 (3d Cir. 2024).

An administrative remedy is unavailable, and administrative exhaustion is excused, when it "operates as a simple dead end(,) . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " *Downey*, 968 F.3d at 305 (quoting *Shifflett v.*

*Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)) (cleaned up). *See also Timmons v. Bohinski*, --- F.4th ---, ---, No. 25-1516, 2026 WL 2331684, at *2 (3d Cir. Aug. 12, 2026). "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Id.* In these situations, "[w]hat is good for the goose is good for the gander," and "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 365, 367.

The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Spruill v. Gillis*, 372 F.3d 218, 230–31 (3d Cir. 2004) (explaining that "prison grievance procedures supply the yardstick for measuring procedural default."). The procedural requirements for exhaustion in each case "are drawn from the policies of the prison in question rather than from any free-standing federal law." *Shifflett*, 934 F.3d at 364. Proper exhaustion requires full compliance with the prison's deadlines and procedures, and an untimely or procedurally defective grievance or appeal does not satisfy the PLRA and precludes a prisoner from subsequently filing his claims in federal court. *Spruill*, 372 F.3d at 231; *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000), *aff'd,* 532 U.S. 731 (2001).

It is not the plaintiff's burden to demonstrate exhaustion. *Jones*, 549 U.S. at 216 (holding that "failure to exhaust is an affirmative defense under the PLRA, and

that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). The failure to exhaust must be asserted and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). "[E]xhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013).

The relevant Pennsylvania Department of Corrections ("DOC") policy here is DC-ADM 804,[2] which governs the grievance and appeals process in Pennsylvania correctional institutions. According to DC-ADM 804, "every individual committed to [DOC] custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement. For every such issue, there shall be a forum for review and two avenues of appeal." DC-ADM 804 at p.1.

The DC-ADM 804 Inmate Grievance System sets forth three separate stages: First, the prisoner must timely submit a written grievance for review by the facility grievance coordinator using the approved form within fifteen working days of the incident, at which time the facility coordinator will assign a tracking number to the grievance and respond within fifteen business days. DC-ADM 804 §§ 1.A, C. The Inmate Grievance System provides that the grievance must include "a statement of facts relevant to the claim" and shall include, *inter alia*, "the date, approximate

---

[2] *See* DC-ADM 804 Policy Statement, available online at: https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (effective May 1, 2015) (last visited September 9, 2026).

time, and location of the event(s) that gave rise to the grievance," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violation of Department directives, regulations, court orders, or other law." DC-ADM 804 §1.A.11.

At the second stage in the DC-ADM 804 Inmate Grievance System, the inmate must timely submit a written appeal within fifteen working days from the initial review, and again the inmate will receive a written response thereto within fifteen working days. *Id.* at § 2.A. Importantly here, an inmate may either resubmit or appeal a rejected grievance in accordance with the appeal process. *Id.* at §§ 1.A.20-21. Lastly, the inmate must submit a timely appeal for final review to SOIGA within fifteen working days, and the inmate will receive a final determination in writing within thirty days thereafter. *Id.* at § 2.B. An inmate appealing a grievance to final review must provide SOIGA with the following documentation: (1) a legible copy of the Initial Grievance; (2) a copy of the initial review response/rejection and/or remanded initial review response/rejection; (3) a legible copy of the Inmate Appeal to the Facility Manager; (4) a copy of the Facility Manager/designee's decision and/or remanded Facility Manager/designee's decision; and (5) a written appeal to the SOIGA. *Id.* at §§ 2.B.1.j.1-5. DC-ADM 804 further provides that "failure to provide any of the documentation noted above may result in the appeal being dismissed[.]" *Id.* at §2.B.1.j.6.

It is undisputed that the only grievance of record related to medical issue is Grievance No. 1116628, dated November 5, 2024 and was received on November 6,

2024. As it related to an event in October of 2023, this grievance was rejected as untimely (beyond the 15-day requirement for filing) and Dolph did not appeal the rejection. Thus, Dolph did not properly exhaust his administrative remedies because "an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the exhaustion requirement." *Bakhtiari v. Spaulding*, 779 F. App'x 129, 132 (3d Cir. 2019) (citing *Woodford*, 548 U.S. at 84).

While Dolph claims he filed a timely grievance after he returned from the hospital and it was lost, misplaced, and never received, this barebones assertion in his amended complaint is insufficient to create a genuine issue of material fact that the grievance procedure was somehow unavailable to him. Dolph did not respond to the motion nor present any evidence supporting his claim that he submitted such a grievance. A party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings" but must "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In other words, "a summary judgment opposition will lack adequate support if it rests on a scintilla of evidence." *Timmons*, --- F.4th ---, ---, 2026 WL 2331684 at *4 (cleaned up). *See Maclary v. Carroll*, 142 F. App'x 618, 620 (3d Cir. 2005) (allegations that inmate filed unanswered and unprocessed grievances and letters to prison officials on the matter but did not offer any support for those bare assertions did not create a genuine issue for trial); *Sartoris v. Zito*, No. 3:21-CV-1646, 2024 WL 525159, at *5 (M.D. Pa. Feb. 9, 2024), *appeal dismissed sub nom. Sartoris v. Haidle*, No. 24-1871, 2024 WL 4750129 (3d

Cir. June 25, 2024) (inmate's "mere allegation that he filed a grievance, and the grievance went unanswered is not sufficient to survive" summary judgment); *Simmons v. Lanigan*, No. CV164215MASDEA, 2021 WL 1712577, at *4 (D.N.J. Apr. 30, 2021) (inmate could not defeat summary judgment through self-serving affidavits which vaguely insisted he appealed grievances that thereafter vanished, and was instead required to provide direct evidence which set forth specific facts that contradicted defendant's evidence to establish a genuine issue of material fact). *But see Timmons*, --- F.4th ---, ---, 2026 WL 2331684 at *3-*4 (finding that a plaintiff's declaration "that rests on denials without factual support will fail" to raise an inference that the grievance process was unavailable to him, but a plaintiff's declaration that corrections officer discarded a grievance and threatened plaintiff with bodily harm on two occasions was sufficient to support an inference of intimidation to make the grievance process unavailable).

Moreover, in Grievance No. 1116628 submitted thirteen months later in November 2024, Dolph seemingly admitted that was the first grievance he filed with respect to the October 2023 medical emergency ("I am filing this grievance now due to my not knowing I had to file one to proceed to legal actions …"), contradicting the allegations in his complaint that he timely filed a grievance in 2023 that was lost, misplaced, and never received. ECF No. 21-3 at 4. Without a response to the motion and with ample opportunity to do so, there is no evidence whatsoever that sets forth specific facts contradicting Dr. Naji's evidence and assertions. As a result, Dolph has failed to show a genuine issue of material fact that administrative

remedies were in any way unavailable to him before he eventually filed his lone grievance more than a year after he was required to do so.

Accordingly, Dolph has failed to exhaust his administrative remedies and Dr. Naji's motion for summary judgment is granted.

## V. Conclusion

Based on the above, Dr. Naji's motion for summary judgment for failure to exhaust administrative remedies is GRANTED. An appropriate Order follows.

DATED this 9th day of September, 2026.

BY THE COURT:

s/Christopher B. Brown
United States Magistrate Judge